**In the Matter of Walter TOLL, Glenda Y. Toll, Debtors.**

**Bankruptcy No. 94–81897.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

Sept. 23, 1994.

Vera Smith Hollingsworth, Decatur, AL, for debtors Walter and Glenda Y. Toll.

Jan Eberhardt, Parsons, Eberhardt and Blankenship, Huntsville, AL, for Don Johnson.

## ORDER

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on a motion filed by the debtors for the return of certain personal property, to hold Don Johnson in contempt of court for willful violation of the automatic stay, and for actual and punitive damages. 11 U.S.C. § 362(h). The hearing in this matter was held on the 20th day of September, 1994.

From the evidence presented, the Court makes the following findings of fact. On or about December 30, 1993, the parties executed a land sale contract, whereby the debtors purchased a house from Johnson. The debtors made a $2,000.00 down payment on same and were to make monthly payments in the amount of $688.00 thereafter. Don Johnson testified that there was also an agreement, which granted him a purported security interest in all the debtors' household goods to secure the contract. No such agreement was introduced into evidence.

In May, 1994, Johnson spoke with the debtors about their failure to pay the monthly mortgage payments and to maintain the premises in a good condition. On July 23, 1994, Johnson gave the debtors a first notice of eviction. The parties reached an agreement in August, 1994, and the debtors at that time made a payment in the amount of $688.00. For some reason, the parties had the original land sale contract, which was dated December 30, 1993, notarized at the time of the August, 1994, agreement, ie, August 2, 1994. It was agreed that the debtors could remain on the premises.

The debtors continued to have financial problems, and on August 26, 1994, filed for relief under Chapter 13 of the Bankruptcy Code. The debtors' Chapter 13 plan proposed to surrender the house to Johnson. The debtors began to remove their possessions from the house in order to release the premises to Johnson, but continued to live there during the interim.

On Saturday morning, September 10, 1994, Johnson went to the debtors' home and asked if he and Toll could go outside and talk. Johnson attempted to give him the second notice of eviction, i.e., a demand for possession. The debtor refused to go outside and refused to accept the document. He informed Johnson that they had filed bankruptcy and gave Johnson the name and address of their bankruptcy attorney. Johnson then wadded up the eviction notice and threw it on the floor and said "you've been served".

Johnson also wadded up the paper with the debtors' attorney's name and phone number on it and "put it in his pocket".

Over the next few days, the debtors continued to move small household items to their new residence. The debtors were unable to do it faster because they both worked during the day and lacked the funds to rent a large truck to move all the furniture at one time.

On Thursday, September 15, 1994, the debtors' teenage daughter returned home from school, and as she entered the house she realized that someone had broken in and taken the majority of their furniture. She was very upset and scared and went to her neighbor's house to call her parents and the police. She was unable to use the phone in her home because it had been taken with the other items.

She called her mother and father at work. Her father told her to call the police and that he would be home in a few minutes. She called the sheriff's office but they informed her that they would not come to investigate the matter because Johnson had already spoken to said authorities about what he was going to do.

When the debtors arrived at home, they discovered that the refrigerator, the washer and dryer, three chests-of-drawers, one dresser, two or three beds, mattresses and other household goods had been taken, including the daughter's Mickey Mouse watch. They also discovered that the back door had been damaged due to the forced entry. Subsequently, the debtors learned that Johnson, along with a crew of three men, were the parties responsible for taking their possessions.

The evidence shows that Johnson took perishable food items from the refrigerator and placed them on top of the counter to ruin. The teenage daughter's clothes had been taken from her dresser and chest-of-draws and thrown into the middle of the floor. Her dolls and bed sheets were also on the floor because her bed had been taken. Her room had been totally "trashed".

Mrs. Toll testified that most of her clothes were in the washer and dryer when they were taken. She has been doing without them for the last week and lacked sufficient funds to replace them.

Mr. Johnson testified that he had spoken with the District Attorney and Sheriff of Cullman County about repossessing these household items in which he had a security interest. He stated that both of these officials told him he could repossess the household items. He also stated that when he asked these officials for legal advice, he told them the debtors were in bankruptcy, and they still said "he could get his stuff".

Ms. Hollingsworth, attorney for the debtors and an officer of this Court, verified to the Court that she contacted the District Attorney and the Sheriff about this matter. Both officials stated to Ms. Hollingsworth that Johnson did not mention the fact that the debtors were in bankruptcy.

The Court does not believe that Johnson fully informed the District Attorney and Sheriff of the fact situation. When Ms. Hollingsworth informed the Sheriff that the debtors were in bankruptcy, he immediately sent a deputy to investigate the break-in at the house.

■ After consideration of the evidence, the Court finds that Johnson had knowledge that the debtors were in bankruptcy, and his actions of taking the debtors' possessions were in violation of the automatic stay. Johnson never attempted to contact Ms. Hollingsworth to discuss the matter. He broke into the debtors' home, took their possessions and wreaked havoc to the premises. Johnson's action were unscrupulous and vicious. His actions caused the debtors and their family undue hardship and anxiety. The debtors were without their beds and slept on the floor because they lacked the funds to go to a hotel, and were forced to make other eating arrangements because they did not have the refrigerator.

Johnson testified that the land sale contract contained an automatic default provision upon the bankruptcy of the purchasers giving him the immediate right to re-enter the premises. The land sale contract does in fact contain such a provision. On the one hand, he argues that the bankruptcy of the debtors entitled him to immediate possession

of the subject premises, but on the other hand, he contends that he did not know the debtors were in bankruptcy. He further contends that the land sale contract provides for re-entry by him upon the abandonment of the premises by the debtors.

First, *ipso facto* clauses are not recognized by the Bankruptcy Code. 11 U.S.C. § 365(d)(6). Second, the Court specifically finds that Johnson knew of the bankruptcy. The debtor, Walter Toll, and the debtors' son-in-law, Darren Harbinson, testified that Johnson was told about the Chapter 13 bankruptcy on September 10, 1994. In addition, Court finds that the debtors did not and had not abandoned the premises when Johnson took their possessions. It was obvious from the evidence that the property was still inhabited. The debtors had an equitable and legal interest in said premises under the land sale contract under bankruptcy and Alabama law. 11 U.S.C. § 541; §§ 6–5–245 et seq. *Code of Alabama* (1975).

The Court is of the opinion that non-bankruptcy law did not entitled Johnson to repossess the household items, and the Court concludes that eviction proceedings are not the proper way to terminate a land sale contract. Johnason had given the debtors a 10 day eviction notice on July 23, 1994, but in August, 1994, he renewed the contract with the debtors, re-dated or notarized it and accepted a payment from them. These actions by Johnson made the eviction notice null and void if in fact the same had any legal effect.

Section 362(h) allows this Court to grant the debtors actual damages, including costs and attorney's fee, due to Johnson's willful violation of the automatic stay. Therefore, the Court awards the debtors $5,000.00 ($1,000.00 a day from September 15, 1994 to September 20, 1994) in compensatory damages and $650.00 in attorney's fee. Section 362(h) also allows the Court, in the appropriate circumstances, to award punitive damages. This Court is of the opinion that the circumstances in this case dictate that punitive damages be awarded. Therefore, the debtors are awarded the sum of $10,000.00 as punitive damages due to Johnson's gross misconduct.

Furthermore, Johnson is to return all the household and personal items he took from the debtors' home immediately. For each day he fails to comply with this Order, the debtors are awarded an additional $200.00.

It is therefore ORDERED, ADJUDGED AND DECREED that Don Johnson return the above mentioned items to the debtors, Walter and Glenda Toll, forthwith.

It is also ORDERED, ADJUDGED AND DECREED that the debtors, Walter and Glenda Toll, are awarded $5,000.00 compensatory damages, $10,000.00 punitive damages, and $650.00 attorney's fee.

It is further ORDERED, ADJUDGED AND DECREED that the award of these damages are to be setoff against the amount, if any, owed by the debtors to Johnson.

Done and Ordered.